IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HAKEIM ROBINSON** | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| **ROBERT SHANNON,** | : | |
| **THE DISTRICT ATTORNEY OF THE** | : | |
| **COUNTY OF PHILADELPHIA,** | : | |
| **THE ATTORNEY GENERAL OF THE** | : | |
| **STATE OF PENNSYLVANIA** | : | NO. 08-1074 |

OPINION

**NORMA L. SHAPIRO, J.**                                                                  August 10, 2009

      Hakeim Robinson, an inmate at the State Correctional Institution at Frackville, Pennsylvania, filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254. Magistrate Judge Henry S. Perkin issued a Report and Recommendation ("R&R") recommending the petition be denied. Petitioner's timely objections are overruled in part and sustained in part, but the petition will be denied.

**I.   BACKGROUND**

      On August 29, 2000, Richard Williams, Jr. was fatally shot inside his apartment in West Philadelphia.[1] The Commonwealth alleged the shooting occurred during an unsuccessful robbery

---

[1] The facts leading to Robinson's conviction were summarized by the Pennsylvania Superior Court on direct appeal. See Commonwealth v. Robinson, No. 3138 EDA 2002, slip op. (Pa. Super. Ct. July 9, 2003). A state court's determination of a factual issue is presumed to be correct under 28 U.S.C. § 2254(e)(1). A habeas petitioner can only rebut state-court findings of fact by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). This presumption applies to both state trial and appellate courts. Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996); Duncan v. Morton, 256 F.3d 189, 196 (3d Cir. 2001).

devised by Robert Jones, a friend of Williams. Jones, who knew Williams sold marijuana from his apartment, recruited Hakeim Robinson and Fred Porter to participate in a sham drug transaction during which they would rob Williams at gunpoint. Jones anticipated that Williams' girlfriend, Lakeisha Pannell, would be inside the apartment, so he instructed Leonard Arter, an acquaintance of Williams and Pannell, to visit the apartment in advance of the robbery and persuade Pannell to leave.[2] Robinson drove Arter and Jones to Williams' apartment, Arter entered alone, and, following a brief exchange, Arter was unable to convince Pannell to leave. Shortly after Arter left, Williams was robbed and murdered.

Robinson, Jones and Porter all confessed involvement in the robbery, but gave conflicting accounts of the murder.[3] Robinson gave a sworn confession to police:

> Earlier that night I was with two guys out my way. The first guy said he wanted to go get a couple of dollars and wanted me to go with him down to the Bottom. We go and get this third guy who was with his friends. The first guy said we were going down to the bottom to get us a couple dollars . . .. He meant he was going to rip somebody off. He was setting it up. He was basically telling the third guy just go in and put the gun in his face and he will give you anything you want.
>
> * * *
>
> We went to Richard's house and we were going to buy a bag or two to make it look good.
>
> * * *
>
> Me and the first guy go into Richard's house and we conversate. We're in

---

[2] Arter testified he was unaware of the plan to rob Williams and that Jones suggested the purpose of the visit was to invite Pannell to a party. Arter testified: "[Jones] said, Can you come with me so we can go down to my boy's [Williams'] crib so we can party and get the girl [Pannell] out the crib so we can take her back to my man's crib." (N.T. 4/23/02, 73-74.)

[3] As read to the jury, the confessions were redacted by substituting references to Robinson, Jones, and Porter with, "first guy," "second guy," "third guy," and "two guys."

> Richard's about three minutes . . .. Richard had a girl with him. I didn't see her but I knew she was there. I know she dances at bars and stuff. Matter of fact, she dances at the Panther Bar, 35th and Mount Vernon Streets.
>
> * * *
>
> We had it planned that as I left out of the apartment, the guy with the gun would come rushing into the apartment. That's what happened. He comes in with the gun. He smacks Richard and told him – Richard to get the hell down and then tells Richard, Where is the shit at? Then he hit the guy again and he was down on the floor and he pointed over to the couch and said it's behind the couch or something like that. I left out and I heard the bang. Later the guy with the gun told me that Richard started fighting and as Richard came towards him, the gun just went off accidentally.

(N.T. 4/25/02, 85-96.)

Jones gave two statements to the police. Jones initially claimed he was inside Williams' apartment when Porter forcibly entered and shot Williams during the scuffle. Jones later told police he and Robinson gained entry to Williams' apartment under the pretext of buying marijuana and arranged for Porter to commit the robbery while Jones and Robinson were inside the apartment. Jones stated he did not intend for Porter to kill Williams during the robbery. In Porter's confession, he admitted being near the crime scene, but denied entering Williams' apartment or being involved in the shooting. Porter claimed he was outside the apartment when Robinson and Jones committed the robbery.

Robinson, Jones and Porter were tried jointly. None of the defendants testified at trial, but their redacted confessions were read to the jury. The jury was instructed that each statement could only be offered as evidence against the defendant who made it, not against a co-defendant. None of the defendants presented testimony rebutting the Commonwealth's case. In his closing argument, counsel for Robinson relied on Pannell's testimony that she did not see Robinson in

the victim's apartment at the time of the murder.  The jury found Robinson, Jones and Porter guilty of second degree murder, robbery and related crimes; each defendant was sentenced to life imprisonment.[4]

Robinson filed a post-trial motion challenging sufficiency of the evidence; the motion was denied.  He timely appealed his conviction to the Pennsylvania Superior court; the appeal was denied. Commonwealth v. Robinson, No. 3138 EDA 2002, slip op. (Pa. Super. Ct. July 9, 2003).  He filed a petition for allowance of appeal with the Pennsylvania Supreme Court; the court granted the petition as to the alleged Confrontation Clause violations, but later dismissed the application as improvidently granted. Commonwealth v. Robinson, 851 A.2d. 831 (Pa. 2004) (table).

Robinson petitioned for relief under the Pennsylvania Post Conviction Relief Act, 42 Pa. C.S. §§ 9541-46 ("PCRA").  After an evidentiary hearing, the PCRA court denied relief. Robinson's appeal to the Superior Court was denied. Commonwealth v. Robinson, No. 1127 EDA 2006, slip op. (Pa. Super. Ct. Aug. 27, 2007).  Robinson's petition for allowance of appeal to the Pennsylvania Supreme Court was also denied. Commonwealth v. Robinson, 938 A.2d 1052 (Pa. 2007) (table).

The instant petition for a writ of habeas corpus alleges four grounds for relief: (1) presentation of the Jones and Porter confessions to the jury violated the Sixth Amendment Confrontation Clause; (2) ineffective assistance of trial counsel violated the Sixth Amendment

---

[4] Robinson was convicted of second-degree murder, robbery, burglary, and conspiracy. He was sentenced to life imprisonment for murder, two to four year's imprisonment for burglary (served consecutively), and three to six year's imprisonment for conspiracy (served concurrently).

4

right to counsel; (3) prosecutorial misconduct violated the Fifth Amendment right against self-incrimination; and (4) ineffective assistance of direct appeal counsel violated the Sixth Amendment right to counsel. All four claims have been exhausted in state court. The R&R found all four claims lacked merit. Robinson filed timely objections supporting each claim for relief.

**II.     DISCUSSION**

Federal courts have jurisdiction over petitions for writs of habeas corpus challenging state confinement in violation of the United States Constitution. 28 U.S.C. § 2241. A district court reviews *de novo* those portions of a magistrate judge's report and recommendation to which objections were made. See 28 U.S.C. § 636(b)(1)(c).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides a writ of habeas corpus for a person serving a state court sentence shall not be granted unless the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). "As long as the reasoning of the state court does not contradict relevant Supreme Court precedent, AEDPA's general rule of deference applies." Priester v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004), citing Early v. Packer, 537 U.S. 3 (2002), Woodford v. Visciotti, 537 U.S. 19 (2002).

**A.     Confrontation Clause Claims**

At trial, the Jones and Porter confessions inculpating Robinson were read to the jury by detectives who investigated the crime. The confessions were not subject to cross-examination

because neither Jones nor Porter testified at trial. Their confessions had been redacted by replacing Robinson's name with terms such as, "some guy I know," "the guy with me," and "the guy I knew." (N.T. 4/25/02, at 103-04.) Robinson claims the confessions implicated him in violation of the Sixth Amendment Confrontation Clause.

"In all criminal prosecutions, the accused shall enjoy the right to be confronted with the witnesses against him." U.S. CONST. amend. VI. "The right of cross-examination is included in the right of an accused in a criminal case to confront the witnesses against him." Pointer v. Texas, 380 U.S. 400, 404 (1965). In Bruton v. United States, 391 U.S. 123, 137 (1968), the Court held testimony about a co-defendant's statement implicating the defendant was unconstitutional because the defendant had no opportunity to cross-examine the co-defendant; a limiting instruction was insufficient to rectify jury exposure to the incriminating statement. Id.

In Richardson v. Marsh, 481 U.S. 200 (1987), the trial court admitted a co-defendant's confession redacted to remove any reference to defendant. The redacted confession did not suggest defendant's involvement; it was only possible to link defendant to the confession through other evidence. Id. at 208. The Court ruled, "[T]he Confrontation Clause is not violated by the admission of a nontestifying co-defendant's confession with a proper limiting instruction when . . . the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." Id. at 211. The Court distinguished Bruton, where the defendant was "expressly implicated" by his co-defendant's "powerfully incriminating" confession. Id. at 208. Unlike Bruton, the Court said the Richardson confession was "not incriminating on its face," so its presentation to the jury did not violate the Confrontation Clause. Id. The Court, while narrowing its prior holding, declined to address "the admissibility of a confession in which the defendant's

name has been replaced with a symbol or neutral pronoun." Id. at 211 n. 5.

In Gray v. Maryland, 523 U.S. 185 (1998), the presentation at trial of co-defendants' incriminating statements, obviously implicating the defendant even when redacted, was a violation of defendant's confrontation right. There, Kevin Gray was tried jointly with Anthony Bell for the beating death of a woman.[5] Id. at 188. Bell's confession implicated Gray, so the trial judge ordered the confession redacted. Id. The witness who read Bell's confession replaced Gray's name with the words, "deleted" or "deletion,"[6] and a written copy of the confession was admitted as evidence, with Gray's name replaced with blank spaces separated by commas. Id. at 189. The confession's reference to Gray was further obscured by testimony from other witnesses that six people had participated in the beating. Id. The court instructed the jury that Bell's confession was not evidence of Gray's guilt. Id. A jury convicted both Bell and Gray. Id. Gray appealed.

The Supreme Court found the redacted version of the confession presented to the jury conspicuously indicated a deletion from Bell's statement, and given the deletion's context in the statement, it was an obvious reference to Gray in violation of the Confrontation Clause under Bruton. Id. at 192. A reasonable juror would have assumed the deleted name was Gray's, so a limiting instruction to the jury would have reinforced rather than mitigated the incriminating inference. Id. at 193. The Court distinguished Richardson, where the jury could only infer defendant's guilt from the confession because of other evidence presented at trial. In contrast,

---

[5] A third participant in the beatings died before trial.

[6] For example, in one instance the redacted confession read, "Question: Who was in the group that beat Stacey? Answer: Me, deleted, deleted, and a few other guys." Id. at 196.

Bell's redacted confession in Gray was facially incriminatory because it contained "inferences that a jury could make immediately, even were the confession the very first item introduced at trial." Id. at 196.

There is no Supreme Court precedent governing the constitutionality of redacted confessions that are more incriminating than the statement in Richardson (where the redaction deleted all references to defendant's involvement in the crime), but less incriminating than the statement in Gray (where the redaction contained a conspicuous deletion creating an obvious inference of defendant's involvement).

In Vazquez v. Wilson, 550 F.3d 270 (3d Cir. 2008), the Court of Appeals considered whether a redaction's reference to the generic phrase, "the other guy," violated Bruton.[7] Vazquez was tried jointly with Santiago for the shooting death of Coleman. Id. at 273. The critical issue was whether Vazquez or George Rivera[8] fired the fatal shot. Id. Santiago, in his statement to police, claimed he was in a car with Vazquez and Rivera at the time of the shooting and was surprised when Vazquez opened fire. Id. at 273-74. The detective who had taken Santiago's statement read the jury a redacted version, in which Vazquez's and Rivera's names were substituted with the phrases "my boy" and "the other guy." Id. Santiago did not testify at trial. In closing argument, the prosecutor implicitly revealed Vazquez as the shooter anonymously

---

[7] Under AEDPA a state court decision cannot be reversed unless "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). "[C]ourt of appeals precedent is irrelevant to the ultimate issue." Wilkerson v. Klem, 412 F.3d 449, 454 (3d Cir. 2005). However, a district court may be guided by decisions of the Court of Appeals in its analysis of Supreme Court precedent. See Vazquez 550 F.3d at 282.

[8] Rivera was not brought to trial; the reason for this is unclear. Vazquez 550 F.3d at 273.

implicated in Santiago's redacted statement. Id. at 275.[9] The trial court instructed the jury that it was not to consider Santiago's statement as evidence against Vazquez. Id. However, the jury questioned whether it could consider Santiago's statement implicating Vazquez as the shooter; this confirmed the redaction and limiting instruction were ineffective. Id. The jury convicted Vazquez of first-degree murder and acquitted Santiago. Id.

The Court of Appeals, reversing the district court's denial of habeas relief, found a Bruton violation. Id. at 276. Emphasizing the importance of considering the factual record and context of the confession in the Bruton analysis, the court held that Santiago's redacted statement clearly identified Vazquez as the shooter; the prosecution's use of the statement was an "unreasonable application" of Bruton and Gray. Id. at 280-281.

### 1. Use of Jones' Confession

A redacted version of Jones' confession was read to the jury. Robinson claims he was denied his right of confrontation because the confession, which referred to Robinson as "some guy I know," was an obvious, incriminating reference to Robinson not subject to cross examination.

---

[9] "At the closing argument, after Santiago's counsel again emphasized that his client had identified the other occupants of the Buick, the prosecutor effectively eliminated the redaction of Vazquez's name and reinserted it in Santiago's statement when she referred to 'Mr. Santiago's statement that he and the other man George, excuse me, the man who's not the shooter, he said, [had] jumped out of the car.' Obviously, the prosecutor's statement identified Vazquez as the shooter because in his statement Santiago had claimed that neither he nor 'George,' a name that could mean only Rivera, had not been the shooter. Thus, Santiago's statement assigned that unwanted role to Vazquez as he was the only person left to fill it. As might be expected, the prosecutor's comment led Vazquez to move again for a mistrial, which the court denied, even though the prosecutor admitted that 'I clearly misspoke . . . and I did say it, without question.'" Vazquez, 550 F.3d at 275.

In his confession, Jones stated that he and "some guy I know" discussed the robbery of Richard Williams, and this "guy" told Jones "the second guy" had a gun. (N.T. 4/25/02 at 103-04.) Jones also stated, "We buy a couple of bags of weed to make it look good," and, "The guy I knew was at the door. He opens the door and then the guy with the gun comes in." (N.T. 4/25/02 at 104.) When asked, "How did the gunman get inside?," Jones responded, "The plan was for the guy with me to open the door and that's when the guy with the gun was to come in." (N.T. 4/25/02 at 106.)[10] Robinson claims this statement was incriminating, but not subject to cross-examination.

On direct appeal, the Pennsylvania Superior Court found Robinson had waived this claim by failing to object at trial, but in a footnote, addressed the merits by distinguishing Gray and finding no violation of the Confrontation Clause. Commonwealth v. Robinson, No. 3138 EDA 2002 n.6, slip op. (Pa. Super. Ct. July 9, 2003). On PCRA review, the Superior Court again found Robinson's Sixth Amendment right was not violated under Bruton, Richardson, and Gray. Commonwealth v. Robinson, No. 1127 EDA 2006, slip op. (Pa. Super. Ct. Aug. 27, 2007).

From the context of Jones' redacted confession, it is clear that one of the "guys" implicated in the statement must have been Robinson. Because Robinson, Jones and Porter were tried jointly, the jury could have easily concluded that Robinson was one of the three "guys" who

---

[10] When the detective read Jones' confession to the jury, he encountered a transcription error in the redaction. The redacted version was incorrectly transcribed as, "Me and went up," instead of, "Me *and the first guy* went up." The detective alerted the court to the redaction error in front of the jury and attempted to clarify the statement by adding, "the first guy." Porter's counsel objected on grounds that "the first guy" did not appear in the redacted version and should not be read to the jury. Sustaining the objection, the court instructed the detective to read the statement as errantly transcribed. Robinson argues the redaction was obvious and clearly implied to the jury that the statement had been altered to remove his name.

participated in the crime. The jury might not have known whether Robinson or Porter was "the guy with the gun," but Jones' statement clearly implicated Robinson's involvement. Admitting the statement as evidence when Jones was unavailable for cross-examination violated the Sixth Amendment Confrontation Clause under Bruton and Gray; state court decisions to the contrary unreasonably applied clearly established Supreme Court precedent.

### 2. Reference to Porter's Statement as Redacted

Robinson claims his right of confrontation was violated when the detective referred to Porter's confession as a "redacted copy of the interview." The trial court offered a curative jury instruction, but Robinson's counsel declined. Robinson claims the detective's comment implied the statement had been redacted to remove an incriminating reference to Robinson.

The Court of Appeals recently addressed a similar issue in a non-precedential opinion, Phu Duc Nguyen v. Love, 279 Fed. Appx. 127 (3d Cir. 2008). There, a prosecutor referred to co-defendant's statement as having been redacted. The Court of Appeals held it was unclear from the context of the statement why the statement had been redacted, so the jury could not have drawn the inference that the statement was incriminating; there was no Confrontation Clause violation. Id. at 130.

Here, the detective revealed that Porter's statement had been redacted, but did not disclose what had been deleted or suggest the original statement implicated Robinson. The detective's reference to the redaction did not violate the Confrontation Clause.

### 3. Harmless Error

The use of Jones' confession at trial was a violation of the Confrontation Clause, but the

court should only vacate Robinson's guilty verdict if the violation had a "substantial and injurious effect" on the fairness of the trial. See Fry v. Pliler, 127 S. Ct. 2321, 2328 (2007) ("A court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard."); see also O'Neal v. McAninch, 513 U.S. 432, 436 (1995); Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

The violations were not prejudicial because Robinson confessed to his participation in the crime. (N.T. 4/25/02 at 89-95.) Robinson neither alleged nor offered evidence that his confession was coerced or that police mistreated him during the interrogation. In addition to Robinson's confession, the Commonwealth presented other evidence of guilt at trial, including Leonard Arter's testimony describing Robinson's involvement.

Robinson did not call any witnesses in his defense. Defense counsel argued that Robinson had been detained for a few hours before he confessed and it was unknown what happened during those hours or why Robinson eventually chose to confess. However, in his confession, Robinson told police he was confessing at his mother's instruction, not because he had been mistreated by police. There was no credible basis for the jury to conclude Robinson's confession was coerced or unreliable.

Defense counsel's other argument on Robinson's behalf was that Pannell, the only witness in the apartment when the murder took place, had not seen Robinson in the apartment. Robinson's confession stated he did not see Pannell in the apartment either, although he knew she was there. The evidence established she was either lying on a couch or on the floor. It was clearly possible for the jury to infer that Robinson was inside the apartment and neither he nor

Pannell saw each other.

Robinson's confession and Leonard Arter's testimony were sufficient for a jury to find Robinson guilty beyond a reasonable doubt. The Confrontation Clause violations did not have a "substantial and injurious effect" on the fairness of the trial. The errors were harmless and do not warrant granting a writ of habeas corpus. [11]

### B. Ineffective Assistance of Counsel

In his opening statement, Robinson's counsel told the jury that Robinson would testify to his innocence but Robinson never took the stand. Robinson alleges his counsel prevented him from testifying. He claims counsel convinced his family that he should not testify, and his family then convinced him to follow counsel's advice. He complains that counsel was ineffective because: (1) he prevented Robinson from testifying; and (2) told the jury that Robinson would testify but later convinced him not to testify.

The PCRA court found Robinson's factual allegations were false. Robinson's counsel testified he had discussions with Robinson in which they agreed Robinson would testify. Based on those discussions, counsel told the jury Robinson would testify. However, Robinson later changed his mind, but counsel did not coerce him to do so; counsel was distressed by his client's decision but had no time to remonstrate. The PCRA court accepted counsel's uncontested

---

[11] See Bond v. Beard, 539 F.3d 256, 275 (3d Cir. 2008) (because defendant confessed and there was an eye witness to the crime, a Confrontation Clause violation was not "substantial and injurious" and was not grounds for habeas relief).

13

testimony.[12]

"A court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland v. Washington, 466 U.S. 668, 690 (1984). "Judicial scrutiny of counsel's performance must be highly deferential." Id. at 689. Counsel told the jury that Robinson would testify because Robinson had agreed to testify; he did nothing to coerce Robinson not to testify. He did what a reasonable attorney would do.

Robinson relies on Ouber v. Guarino, 293 F.3d 19 (1st Cir. 2002), where counsel promised defendant would testify in his opening statement but, during trial, advised defendant not to testify. Id. at 22, 28. Counsel was ineffective because it was unreasonable to promise the jury his client would testify, but later advise his client not to testify. Id. at 30. Here, by contrast, Robinson agreed to testify at the time counsel made his opening statement but later decided not to testify. Counsel reasonably relied on Robinson's stated intent to testify when he gave his opening statement and could not have predicted Robinson would later change his mind. Trial counsel did not provide ineffective assistance.

### C.     Prosecutorial Misconduct

Robinson claims his Fifth Amendment right against self-incrimination was violated when the prosecutor referred to Robinson's decision not to testify. On direct review, the Superior Court held the prosecutor's comments, viewed in context, were not prejudicial and did not

---

[12]Although Robinson presented his position that counsel prevented him from testifying at the PCRA proceeding (he questioned his trial counsel before the court), he did not do so under oath.

suggest that Robinson had a duty to testify or that his failure to do so indicated his guilt.

In his closing argument, defense counsel argued Robinson had no need to testify because the evidence of guilt was weak. The prosecutor responded that because Robinson had not testified, his motive for remaining silent was unknown. All the jury knew, the prosecutor argued, was that Robinson had not testified, despite his attorney's promise that he would. Robinson claims these statements violated the Fifth Amendment.

In Griffin v. California, 380 U.S. 609 (1965), the Court ruled that a prosecutor may not comment on a defendant's silence; such a comment would violate the defendant's Fifth Amendment right against self-incrimination. See also Baxter v. Palmigiano, 425 U.S. 308, 318 (1976) ("Griffin prohibits the judge and prosecutor from suggesting to the jury that it may treat the defendant's silence as substantive evidence of guilt."). When the prosecutor's comments regarding defendant's silence are a fair response to a claim made by defendant or his counsel, there is no violation of the Fifth Amendment. In United States v. Robinson, 485 U.S. 25, 32 (1988), defense counsel argued in his closing argument that defendant was denied an opportunity to defend himself. Id. at 27. The prosecutor responded by arguing that defendant could have testified but chose not to. Id. at 28. The Court allowed the prosecutor's comment as an invited response to defense counsel's argument. Id. at 32.[13]

---

[13] In Goldwire v. Folino, 274 Fed. Appx. 143, 146-47 (3d Cir. 2008), the Court of Appeals held a prosecutor's comment about the defendant's silence was not a violation of the defendant's right against self-incrimination. Defense counsel had asserted that the defendant did not testify because he was afraid of implicating his brother. Id. at 145. Because the defense had "opened the door" to a discussion about defendant's silence, the prosecutor's response was not reversible error. Id. at 146-47.

Here, the prosecutor responded to an argument made by defense counsel to explain Robinson's silence; counsel had argued that Robinson did not testify because the prosecution's case was weak. The defense "opened the door" to the prosecutor's response. United States v. Robinson holds that a prosecutor may comment on the defendant's silence when the door has been opened. There was no prosecutorial misconduct in violation of Supreme Court precedent.

### D. Ineffective Assistance of Direct Appeal Counsel

Robinson claims his counsel on direct appeal was ineffective for failing to assert the Confrontation Clause claims and ineffectiveness of trial counsel. The PCRA court ruled that, because this claim depended on the merits of Robinson's other claims (e.g., alleged violation of the Confrontation Clause and ineffective assistance of counsel) and those claims were without merit, appellate counsel could not have been ineffective.

When a defendant alleges ineffectiveness of counsel for failing to raise a claim, the defendant must prove: (1) the claim counsel failed to raise was meritorious; and (2) there was a reasonable probability that had the claim been raised, the verdict would have been different. See Kimmelman v. Morrison, 477 U.S. 365, 375 (1986). See also United States v. Owens, 882 F.2d 1493, 1498 (10th Cir. 1989); United States v. Dixon, 1 F.3d 1080, 1083 (10th Cir. 1993); United States v. Cook, 45 F.3d 388, 393 (10th Cir. 1995); Newsted v. Gibson, 158 F.3d 1085, 1090 (10th Cir. 1998). Because both of Robinson's underlying claims are without merit, the PCRA court was correct in finding that appellate counsel was not ineffective.

### III. CONCLUSION

Robinson's objections to the R&R as to ineffective assistance of trial counsel, prosecutorial misconduct, and ineffective assistance of direct appeal counsel are overruled. The

magistrate judge's recommendations as to those claims will be approved and adopted. Robinson's objections to the R&R regarding the Confrontation Cause claims are sustained. However, the Confrontation Clause violations were harmless under governing Supreme Court precedent, so the petition for writ of habeas corpus will be denied. A certificate of appealability will be issued as to Robinson's Confrontation Clause claims.